# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCKLIN J. BERSCHNEIDER II,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN COLVIN, Acting<br>Commissioner of Social Security<br><br>Defendant. | **1:13-cv-01945-GSA**<br><br><br><br>**ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT** |

## I.    INTRODUCTION

Rocklin Berschneider ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying Mr. Berschneider's application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

## II.    BACKGROUND AND PRIOR PROCEEDINGS[2]

Plaintiff was born on August 7, 1970. AR 126. He graduated from high school and

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. ECF Nos. 8, 9.
[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

received a degree in culinary arts in 1995. AR 138. Plaintiff worked as a cook at a restaurant from 1994 until 2000, when he began working as a security guard at a winery. AR 138. He held that job until 2008, when he was reassigned to work as a telephone operator because he was experiencing weakness in his hands and was no longer able to pull the trigger on his handgun. AR 208, 214. He held that job until April 2010, when his employment was terminated.[3] AR 138. Plaintiff lives with his wife and adopted minor son. AR 214. More recently, the family moved in with Plaintiff's mother-in-law following the foreclosure of their house. AR 209.

Plaintiff's alleged physical conditions include obesity and myotonic dystrophy.[4] AR 137. Plaintiff's symptoms include general weakness in his extremities, including his arms, fingers, and legs, as well as pain and numbness in his leg. AR 45-46. Plaintiff also alleges gastrointestinal difficulties. AR 269. There is no treatment for myotonic dystrophy. AR 216.

On August 27, 2010, Plaintiff filed an application for disability insurance benefits under Title II. AR 124-25. The application was denied initially on February 4, 2011 and on reconsideration on May 4, 2011. AR 67-71, 75-79. Plaintiff filed a request for a hearing on June 23, 2011. AR 88-89. The hearing was then conducted before Administrative Law Judge Daniel G. Heely (the "ALJ") on January 24, 2012. AR 41. On August 10, 2012, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled. AR 18-29. Plaintiff filed an appeal of this decision with the Appeals Council. The Appeals Council denied the appeal, rendering the order the final decision of the Commissioner. AR 1-7.

Plaintiff now challenges that decision. Specifically, he objects to the ALJ's findings that: (1) myotonic dystrophy and obesity were the only two severe medical impairments at step two of the five-step evaluative process; (2) Plaintiff was not credible when discussing the severity of his impairments; (3) the third party statements about Plaintiff's impairments were not credible; and (4) the opinions of Plaintiff's two treating physicians were entitled to little weight.

[3] The reason for the termination of his employment is not entirely clear. Although Plaintiff states that the job position was eliminated, several third party statements assert that his employment ended because of his medical impairments. AR 137, 204, 207.
[4] According to Plaintiff's genetic evaluation report from the University of California, San Francisco, myotonic dystrophy "is the most common form of muscular dystrophy in adults. It is a quite variable, multi-system disorder, affecting the voluntary muscle system as well as possibly contributing to a large spectrum of conditions." AR 215.

## III.     THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1527, 404.1529.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;[5] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work;[6] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)-(f).

---

[5] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c).

[6] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 18-29. In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 5, 2010, the date specified in his application. AR 23. Further, the ALJ identified obesity and myotonic dystrophy as medically determinable impairments. AR 23. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 23.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform "light work as defined in 20 C.F.R. § 404.1567(b) as follows:  could work at jobs sitting/standing/walking 6 out of 8 hours each with normal breaks, lifting and carrying 50 pounds occasionally and 25 pounds frequently; could engage in frequent but not constant handling and fingering with the bilateral upper extremities." AR 24. Although Plaintiff could not perform his past relevant work, he could perform other work that exists in national economy. AR 20.

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## V.   DISCUSSION

### A.  The Impact of Plaintiff's Medically Determinable Impairments

Plaintiff argues that the ALJ failed to consider the "severity and impact" of several of Plaintiff's medical impairments at step two of his analysis. Plaintiff's Opening Brief ("Opening

2e516caa8d0694d3

1    Brief") 20:16-19, ECF No. 15. Although the ALJ ultimately determined that the Plaintiff's

2    obesity and myotonic dystrophy were both severe impairments under 20 C.F.R. § 404.1520(c),

3    Plaintiff argues that he should also have included the Plaintiff's "pulmonary insufficiency, sleep

4    disorder, peripheral neuropathy, gall stones, and other impairments associated with Myotonic

5    Dystrophy." *Id*. Plaintiff further argues that this failure was prejudicial to Plaintiff because it

6    ultimately discounted several of Plaintiff's complaints.

7         The Commissioner responds that any such failure constituted harmless error and thus does

8    not require remand to the ALJ.

9         A failure to include an impairment in the analysis at step two is only error if the ALJ fails

10   to consider that impairment when considering the Plaintiff's functional limitations at later steps in

11   the sequential evaluation. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision

12   reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error

13   that the ALJ made in failing to include the bursitis at Step 2 was harmless").

14        Plaintiff argues that the ALJ's failure to explicitly include his other medical impairments

15   at step two was prejudicial because the decision did not reflect "Plaintiff's complaints of such

16   symptoms as shortness of breath, leg pain and abdominal symptoms." Opening Brief 21:22-24. A

17   review of the ALJ's decision, however, establishes that the ALJ considered Plaintiff's pulmonary

18   functions (AR 26, *citing* AR 238, 312), leg pain (AR 24 ("According to the Disability Report-

19   Adult, the claimant's ability to work is limited by myotonic dystrophy and meralgia

20   paresthetica"[7])), and abdominal symptoms (AR 27 ("The claimant's reports that ½ of the time he

21   has bowel/diarrhea frequency [sic] and has to go to the bathroom 4-6 times in an 8 hour day (on

22   bad days) for around 10 minutes each time were consistent with his statements to Dr. Ralph"))

23   while determining the Plaintiff's RFC. The ALJ thus considered the additional limitations in his

24   decision, even if they were not expressly listed as severe limitations at step two of his analysis.

25   Any error in failing to list these impairments was thus harmless and remand on these grounds is

26   not warranted.

27   ///

28   _____
     [7] "Meralgia paresthetica" refers to numbness or pain in the outer thigh.

5

### B. Plaintiff's Credibility

Plaintiff challenges the ALJ's rejection of Plaintiff's statements about the "intensity, persistence and functionally limiting effects" of his symptoms. AR 24; Opening Brief 14:1-6. Specifically, Plaintiff argues that: (1) the ALJ's finding that Plaintiff's daily activities contradict his testimony misrepresents Plaintiff's daily activities; (2) the ALJ's argument that the conservative course of treatment disproves Plaintiff's claims is not supported by substantial evidence; (3) discounting Plaintiff's testimony because of the Plaintiff's "demeanor" is inappropriate; and (4) a lack of corroboration with objective medical findings is not a valid reason to find Plaintiff not credible. Opening Brief 14-17.

The Commissioner disputes Plaintiff's characterization of the ALJ's decision, arguing that: (1) Plaintiff stopped working because his position was eliminated (and not due to any medical impairments)[8]; (2) it was entirely appropriate for the ALJ to determine that Plaintiff's daily activities were inconsistent with his alleged symptoms; (3) the ALJ is entitled to consider the course of treatment in evaluating credibility; and (4) the Plaintiff's demeanor at a hearing is a relevant tool to assess credibility. Defendant's Opposition Brief ("Opposition Brief") 9:12-10:21, ECF No. 19.

#### i. Legal standards

To evaluate the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that the impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the

---

[8] It is not clear why this would mean that Plaintiff is not credible—there does not appear to be any inconsistency in Plaintiff's statements about the reason he stopped working. Likewise, the case that the Commissioner cites to support this argument, *Macri v. Chater*, 93 F.3d 540 (9th Cir. 1996) seems only to apply to the situation where a claimant testifies that they were suffering from symptoms, but was simultaneously searching for new employment (thus suggesting that the testimony was false). That is not the case here.

claimant's testimony regarding the severity of the symptoms for "specific, clear and convincing

reasons" that are supported by substantial evidence. *Id*. In this case, the ALJ only doubts

Plaintiff's credibility with respect to the "degree of limitation" alleged. AR 25. Thus, the ALJ

must provide specific, clear, and convincing reasons to disbelieve the testimony.

> An ALJ can consider a variety of factors in assessing a claimant's credibility, including:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks

omitted). Other factors can include a claimant's work record and testimony from physicians and

third parties concerning the nature, severity, and effect of the symptoms of which the claimant

complains. *Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997). An ALJ can only rely on

an inconsistency between a claimant's testimony and the objective medical evidence to reject that

testimony where the ALJ specifies which "complaints are contradicted by what clinical

observations." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999).

An ALJ properly discounts credibility if she makes specific credibility findings that are properly

supported by the record and are sufficiently specific to ensure a reviewing court that she did not

"arbitrarily discredit" the testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

### *ii.   Plaintiff's demeanor*

The ALJ's decision regarding Plaintiff's demeanor at the hearing states only that "the

claimant's demeanor while testifying at the hearing was generally unpersuasive. It is emphasized

that this observation is only one among many being relied on in assessing credibility and is not

determinative." AR 26. The Commissioner correctly argues that an ALJ's personal observations

of a claimant at a hearing can form a part of the credibility analysis. *Nyman v. Heckler*, 779 F.2d

528, 531 (9th Cir. 1985). Such observations, however, cannot "form the sole basis for discrediting

a person's testimony." *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007). Moreover, the ALJ's

observation in this instance is less detailed than in those cases suggesting that personal

observations can form a portion of the credibility analysis—it is not clear from the decision what it was about Plaintiff's demeanor that made him unpersuasive. Thus, while Plaintiff's demeanor can play some role in the credibility analysis, it is not, in this instance, a dispositive one.

### iii.  Conservative course of treatment

The ALJ found that: "The Claimant has not generally received on-going and continuous medical treatment of the type one would expect for a totally disabled individual and the claimant's alleged loss of function is not supported by objective medical findings." AR 25. It is true that an "***unexplained, or inadequately explained***, failure to seek treatment or follow a prescribed course of treatment" can constitute an appropriate reason to disbelieve a Plaintiff. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (emphasis added). Here, however, Plaintiff's minimal course of treatment appears to have a valid explanation. Evidence in the record expressly states that "[t]here is no specific treatment for Myotonic Dystrophy." AR 216. Indeed, the prescribed steps that Plaintiff's treatment team at UCSF suggested seem to include little more than regular checkups to monitor potential complications because of his condition. AR 216, 327-28. Plaintiff appears to have complied, in large part, with these suggestions. AR 316, 319, 320, 329-28. The course of treatment thus does not appear to constitute a clear or convincing reason to find Plaintiff not credible.

### iv.  Lack of corroboration with objective evidence

The ALJ also found that: "The claimant's statements and those of third parties concerning the claimant's impairments and their impact on the claimant's ability to work are not credible in light of discrepancies between the claimant's assertions and information contained in the documentary reports and the reports of the treating and examining practitioners." AR 25. The Commissioner does not contest Plaintiff's argument that this is an invalid reason to find Plaintiff not credible.

To the extent the objective evidence does not support the severity of the limitations asserted by the Plaintiff, however, the ALJ's decision does not specify which statements by Plaintiff are contradicted by which evidence in the record. As a result, this reason is not

sufficiently specific to constitute a valid reason to reject Plaintiff's testimony.[9] *Regennitter*, 166 F.3d at 1297 ("The ALJ also determined that Regennitter's complaints are 'inconsistent with clinical observations.' This determination could satisfy the requirement of a clear and convincing reason for discrediting a claimant's testimony, except that the ALJ did not specify what complaints are contradicted by what clinical observations").

### v.   *Inconsistency with daily activities*

A Plaintiff's daily activities can be considered in an ALJ's credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Such an analysis must be conducted with care, however, because "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). In other words, the ability to perform some daily activities may still be consistent with a finding that a claimant is disabled.

With respect to the Plaintiff's daily activities, the ALJ writes that:

> The daily activities described by the claimant are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant is able to prepare meals, watch television, do some housework, socialize, use the Internet, manage personal finances, go camping and drive a car. I note that driving inherently involves constant and complex coordination.

AR 25.

The evidence in the record, however, suggests that each of these tasks is accomplished only with significant accommodations or caveats. Plaintiff does prepare meals, for example, but this preparation appears to consist, at least in part, of microwaving sandwiches or heating frozen pizzas.[10] AR 155, 210. When preparing more complex meals, he requires assistance in lifting or handling pots and pans and cannot operate a bottle or can opener by himself. AR 152, 154, 155. While Plaintiff is able to perform some household chores, such as placing dishes in a dishwasher and doing laundry, he requires assistance with other chores, such as when feeding household pets

---

[9] This does not necessarily mean that Plaintiff's testimony is, in fact, corroborated by the bulk of the objective evidence. Rather, it means only that a general statement that the Plaintiff's testimony is inconsistent with the reports of doctors is inadequate to meet the burden of stating specific, clear, and convincing reasons for doubting a Plaintiff's testimony.

[10] Plaintiff also has a degree in culinary arts, suggesting that he should be capable of significantly more complex meal preparation, absent any limitations.

1   (AR 146) or going grocery shopping (AR 210). He also elevates his legs for approximately four

2   hours every day. AR 56. And although he was able to go camping in one instance and drive a car,

3   it appears that his family performed the bulk of the labor associated with the camping trip and he

4   had to make special accommodations in his driving to compensate for the weakness in his

5   hands.[11] AR 54, 55. He appears to have difficulty throwing a football or baseball and in

6   maintaining his balance. AR 211.

7          The reasons the ALJ cites, while legitimate reasons to discredit a Plaintiff's testimony, do

8   not appear to be supported by substantial evidence. *Garrison*, 759 F.3d at 1016 ("The ability to

9   talk on the phone, prepare meals once or twice a day, occasionally clean one's room, and, with

10  significant assistance, care for one's daughter, all while taking frequent hours-long rests, avoiding

11  any heavy lifting, and lying in bed most of the day, is consistent . . . with an inability to function

12  in a workplace environment"); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("reading,

13  watching television, and coloring in coloring books are activities that are so undemanding that

14  they cannot be said to bear a meaningful relationship to the activities of the workplace"). Thus,

15  the inconsistencies between Plaintiff's daily activities and his testimony do not establish the clear,

16  convincing, and specific reasons needed to discredit his testimony as to the severity of his

17  symptoms.

18         Plaintiff urges the Court to apply the "credit-as-true" rule and require the ALJ to find "the

19  relevant testimony credible as a matter of law." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775

20  F.3d 1090, 1101 (9th Cir. 2014). Such a rule is only called for "where there are no outstanding

21  issues that must be resolved before a proper disability determination can be made, and where it is

22  clear from the administrative record that the ALJ would be required to award benefits if the

23  claimant's . . . testimony were credited." *Id.* at 1107. Such is not the case here—further

24  administrative proceedings may yet be useful. *Id.* at 1101. As noted above, there are some

25  inconsistencies within the administrative record. Indeed, Plaintiff himself seemed to believe that

26  the record was in need of supplementation; he opted to submit additional third party statements to

27  _____

28  [11] The record does appear to have some inconsistencies regarding Plaintiff's camping trip. Although Plaintiff states that the last time he was camping was in November 2010 and he has "never been camping more than twice a year," Brenda Miller, Plaintiff's mother-in-law, states that the family goes camping "4-5 times a year." AR 149, 210.

the Appeals Council. AR 202-211. The ALJ need not credit Plaintiff's testimony as true on remand.

### C.  Third Party Credibility

Plaintiff also challenges the ALJ's rejection of a third party statement by Brenda Miller, the Plaintiff's mother-in-law.

Lay witness testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ may reject such testimony if he does so expressly by providing "reasons that are germane to each witness." *Dodrill* 12 F.3d at 919. An ALJ need not reconsider each witness individually; "[i]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), *citing Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). An ALJ can disregard a third party statement, for example, that "conflicts with medical evidence." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Similarly, lay witness testimony can be discounted if there is substantial evidence of "[b]ias and financial motive." *Perkins v. Colvin*, 45 F.Supp.3d 1137 (D. Ariz. 2014), *citing Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). To reject lay testimony, "the ALJ need not cite to the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted." *Caldwell v. Astrue*, 804 F.Supp.2d 1098, 1104 (D. Or. 2011).

#### i.  Brenda Miller's Third Party Statement

In rejecting a statement by Brenda Miller, the ALJ writes that:

> The third party statements of the claimant's mother-in-law do not establish that the claimant is disabled. Since she makes no reference to being trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the third party statements is questionable. This third party evidence may also reflect symptomatological exaggerations. Moreover, by virtue of the familial relationship with the claimant, she cannot be considered a disinterested third party whose statements would not tend to be influenced by affection for the claimant and/or a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to the third party's statements because they, like the claimant's, are simply not consistent with the preponderance of the opinions and observations by

1
medical doctors in this case.

2
AR 25.

3
The mere fact that a third party is related to a claimant is not a germane reason to reject

4
that third party's statements. *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The fact that

5
a lay witness is a family member cannot be a ground for rejecting his or her testimony").

6
Evidence of economic bias, however, may form a germane reason to discredit third party

7
testimony. The record indicates that Plaintiff and his family recently moved in with Miller, which

8
has caused a significant financial hardship for her. AR 204 ("they are living here with me and I

9
am not a young person plus on a fixed income so it makes it hard on me also"; "I am having a

10
problem with this because I don't have the money to help them out"). It would not be

11
unreasonable for the ALJ to believe that such a financial hardship could create bias on the part of

12
Miller. Thus, this constitutes a germane reason to reject Miller's statements.[12]

13
Similarly, it was appropriate to discredit at least portions of Miller's statement which

14
related to medical diagnoses. *Tobeler v. Colvin*, 749 F.3d 830, 834 (9th Cir. 2014) ("lay witness

15
testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

16
evidence," but it is proper to disregard "medical diagnoses . . . that they were not competent to

17
make"). Miller's statement appears to consist of both descriptions of symptoms as well as

18
potential diagnoses. AR 150 (*e.g.*, Plaintiff has a "hard time breathing do [sic] to onset of

19
COPD"; "gradual hearing loss"). It was well within the ALJ's discretion to determine whether

20
such statements constitute competent evidence.

21
### ii.   Consideration of Third Party Statements by the Appeals Council

22
After the ALJ issued his decision, but before the Appeals Council considered the decision,

23
Plaintiff submitted seven additional statements to be included in the record. AR 202-213. One

24
statement is from Plaintiff and the other six statements are from his wife, his son, Brenda Miller,

25
and three family friends. Plaintiff now contends that the Appeals Council was "required to give

26

27
---
[12] While the ALJ appropriately rejected this third party statement, it is notable that several portions of the Miller statement are inconsistent with Plaintiff's statements. On remand, the ALJ may wish to reconcile these inconsistencies. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

28

1    reasons germane to each witness" if it declined to consider them. Opening Brief 20:1-3.

2          Federal courts "do not have jurisdiction to review a decision of the Appeals Council

3    denying a request for review of an ALJ's decision, because the Appeals Council decision is a

4    non-final agency action." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir.

5    2012). Once a party submits new and material evidence to the Appeals Council, however, "that

6    evidence becomes part of the administrative record, which the district court must consider when

7    reviewing the Commissioner's final decision for substantial evidence." *Id*. at 1163. The Court has

8    considered these statements in conjunction with the rest of the record in reviewing the ALJ's

9    decision. As explained by the *Brewes* court, however, the Court cannot remand based solely on

10   the actions of the Appeals Council, nor can it hold that it was error for the Appeals Council not to

11   comment on the new evidence.

12         The Commissioner argues that the statements contain material substantially similar to

13   those of Miller's original statement and should thus be excluded on the same bases. Opposition

14   Brief 11:22-28. This may be true, to the extent that they overlap with Miller's original statement.

15   And the germane reasons the ALJ cites for rejecting Miller's statement may apply equally to each

16   of the new parties, as well. Several of the statements introduce additional facts or ambiguities into

17   the record, however, including facts about Plaintiff's functional limitations (AR 205 (Plaintiff

18   "cannot even stand for more than 10-15 minutes at a time"); AR 208 (Plaintiff cannot "throw a

19   ball, hold a bat or kick a soccer ball")).

20         There appear to be ambiguities in the record originally considered by the ALJ and the

21   newly-supplemented record. For example, in his initial statement, Plaintiff states that he is able to

22   throw a football or baseball. AR 157. In the later submitted statement, however, he indicates that

23   he is "unable to throw a football or baseball and have been for some time." AR 210. Several of

24   the other statements include references to Plaintiff's ability to hold or throw balls. AR 149, 203,

25   204, 208. Because this case will be remanded based on the Court's findings with respect to

26   Plaintiff's credibility, the ALJ may wish to reconcile these ambiguities. *Tonapetyan v. Halter*,

27   242 F.3d 1144, 1150 (9th Cir. 2001). On remand, the ALJ should consider whether these third

28   party statements constitute credible and competent lay testimony as to the severity of Plaintiff's

impairments.

### D.  Evaluation of Plaintiff's Treating Physicians

Plaintiff argues that the ALJ incorrectly evaluated the opinions of Plaintiff's two treating physicians, Bernard Hunt, D.O., and Jeffrey Ralph, M.D., who both filled out questionnaires indicating that Plaintiff was unable to perform "any full-time work at any exertion level, including the sedentary level (defined by Social Security as lifting no more than 10 pounds, sitting for 6 hours in an 8-hour work day, and standing/walking for 2 hours in an 8- hour work day)."[13] AR 332, 333. They also state that Plaintiff "has been disabled to the degree set forth above" since January 2007. AR 334, 345.

The ALJ gave little weight to these opinions, citing the contradictory findings of Frank Chen, M.D., a consultative examiner, S. Reddy, M.D., and  J. Linder, M.D.,  reviewing physicians, to whom the ALJ gave great weight.[14] In particular, the ALJ rejected the opinions of Drs. Hunt and Ralph because they were not consistent with the fact that Plaintiff worked until 2010 in positions that had requirements beyond the limitations cited, despite the claims by the doctors that Plaintiff's date of onset occurred in 2007. AR 27. Similarly, the ALJ determined that the doctors were motivated merely by "sympathy for the patient" or were attempting "to avoid unnecessary tension after a demand for supporting material by the patient." AR 27.

Plaintiff asserts that the ALJ incorrectly gave little weight to these opinions because: (1) there is no evidence that the opinions were rendered as a result of undue sympathy or pressure by the Plaintiff; and (2) the fact that Plaintiff briefly worked after 2007, the date of onset of the alleged disability, should not controvert the opinions. Opening Brief 11:21-26; 12:4-12. Plaintiff argues that, at the very least, the ambiguities in the date of onset should have triggered a duty to

---

[13] The two questionnaires are substantially identical and include: (1) a brief description of Plaintiff's impairments; (2) a list of the tests used to verify those impairments; (3) an indication that Plaintiff can sit for approximately one hour and stand/walk for approximately thirty minutes during an 8-hour work day; (4) a statement that Plaintiff must lie down or elevate his legs at least once every hour; and (5) a list of Plaintiff's limitations with respect to various activities such as reaching, pushing/pulling, etc. AR 333, 344. The only distinction between the two questionnaires is that Dr. Ralph's includes a short statement about Plaintiff's gastrointestinal symptoms. AR 345.

[14] Dr. Chen found that Plaintiff had no functional limitations. AR 250. Drs. Reddy and Linder found that Plaintiff could: lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk for 6 hours in an 8-hour day; sit for 6 hours in an 8-hour workday; push/pull without limits; and have frequent handling (gross manipulation) and fingering (fine manipulation). AR 251-57; 273-74.

further develop the record as to what the physicians meant when they stated that January 2007 was the date of disability. Opening Brief 12:13-19.

The Commissioner responds that: (1) the fact that Plaintiff worked after January 2007 was a legitimate reason to give the doctors' opinions little weight; and (2) medical opinions that are motivated purely by sympathy are entitled to little weight. Opposition Brief 6:19-27; 7-13.

### i.   *Legal Standard*

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). However, a "treating physician's opinion is not . . . necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("the ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion").

When the treating doctor's opinion is not contradicted by another doctor, it can be rejected for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may reject it by providing "specific and legitimate reasons" supported by substantial evidence in the record for the rejection. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Here, the opinions of Drs. Hunt and Ralph (i.e., that Plaintiff cannot perform any work) are contradicted by the opinions of Drs. Chen, Linder, and Reddy (i.e., that Plaintiff can perform at least some work). Thus, the ALJ must have provided specific and legitimate reasons supported by substantial evidence to reject their opinions.

### ii.   *Analysis*

Evidence that a doctor has "agreed to become an advocate and assist in presenting a meaningful petition for Social Security benefits" can constitute a specific, legitimate reason to

give a medical opinion little weight. *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992); *Burkhart v. Bowen*, 856 F.2d 1335, 1339 (9th Cir. 1988) (evidence that doctor's opinion was solicited by claimant's counsel a "permissible credibility determination"). However, a search of the record does not reveal any evidence to suggest that this was the case here. Thus, there is not substantial evidence to support rejection of the opinions on these grounds.

The ALJ is correct that Plaintiff appears to have worked after his condition was diagnosed in 2007. AR 138. However, there is also evidence in the record that establishes that myotonic dystrophy is a progressive disease that can cause the affected individual to lose control over muscle contractions, particularly in the hands and fingers. AR 215. Plaintiff's functional limitations also appear to have progressed over a period of years. AR 214 ("Mr. Berschneider reports gastrointestinal concerns and over the past~4-5 years, he has experienced progressive weakness of his hands which ultimately resulted in his inability to shoot a gun and thus perform adequately for his work"); 316 ("Overall, strength has decreased with gross grasp as the attached data confirms").

Plaintiff's work history appears to exemplify this progression of the disease—although he was employed in 2007, he transferred to a more sedentary position soon thereafter to accommodate his increasing functional limitations. AR 161-164, 214. While Plaintiff may have been diagnosed in 2007, it is not clear that the questionnaires completed by Drs. Hunt and Ralph are intended to represent his limitations as of 2007 (rather than as of the dates the forms were filled out—January 9, 2012 and May 4, 2011, respectively). AR 334, 345. Indeed, Plaintiff appears not to have met Dr. Ralph until 2011.[15] AR 57. Some evidence establishes that Plaintiff was, in fact, suffering from relatively severe difficulties by 2007:  his occupational therapist found that his grip strength was "less than 30% of expected norms" in 2007. AR 322.

The fact that Plaintiff worked (albeit in a more limited capacity) while he had the asserted functional limitations does seem to weigh against the opinions of Drs. Hunt and Ralph. However, the nature of Plaintiff's condition, as well as his work history, suggest that the two doctors may

---

[15] Notably, Dr. Ralph, unlike Drs. Chen, Linder, and Reddy, specializes in neurology. His opinion, even if not given controlling weight, is thus entitled to more weight "than the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5).

have understood the question to request the date of diagnosis, rather than the date on which Plaintiff suffered the listed functional limitations. Indeed, given the degenerative nature of myotonic dystrophy, it may not even make sense to ask for a discrete "date of onset" for the purpose of assessing functional limitations. Such a material ambiguity in the record requires further inquiry. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). On remand, the ALJ should determine whether the functional limitations listed by Drs. Hunt and Ralph existed as of 2007 or as of the respective dates they filled out their questionnaires, then re-evaluate how this affects the weight of their respective opinions, given the factors for the assessment of medical source opinions described in 20 C.F.R. § 404.1527.

## VI.   CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence as described above. Accordingly, this Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security and the case is remanded to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Rocklin Berschneider and against Defendant Carolyn W. Colvin, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   __March 31, 2015__            _____ /s/ Gary S. Austin___
                                             UNITED STATES MAGISTRATE JUDGE

17